# CHARLESTOWN.

## FISHER *v.* BROWN.

Submitted January 11, 1884—Decided October 1, 1884.

1. Where a vendor and vendee enter into a written contract for the sale of a tract of land at a stipulated price, which the vendee agrees to pay in future instalments, but fails to pay the same, or any of them, and then assigns the benefit of his contract of purchase to a third party, who takes possession of said land under such assignment, such third party, in the absence of a valid and binding agreement to pay the same, is not personally liable to said vendor for the unpaid purchase-money due upon said land from his said vendee. (p. 720.)

2. Where such vendor brings his suit against such vendee and his assignee, to enforce his vendor's lien against the land, by subjecting the same to sale to satisfy the unpaid instalments which may have become due, he will be entitled to a personal decree against such vendee for said unpaid purchase-money due at the time his suit was brought, and to an order for the sale of the land to pay the same; but he will not be entitled to a personal decree for such unpaid purchase-money against such assignee in the absence of a valid and binding agreement on his part to pay the same.  (p. 720.)

3. If such vendor in such suit against such vendee and assignee obtain a personal decree against such assignee for such unpaid purchase-money, and an order for the sale of said land to satisfy the same, such decree is erroneous, and if appealed from within proper t'me would ordinarily for that cause be reversed; but if it appear in the subsequent proceedings in the cause, that the land was sold for a sum sufficient to satisfy such erroneous decree, and all expenses attending the execution thereof, and that the court confirming such sale, has actually applied the proceeds thereof in full satisfaction of such erroneous decree, this Court would not under such circumstances, for such error alone, reverse such erroneous decree.  (p. 721.)

4. If in such a suit, against such vendee and assignee, the proceeds of the sale of said land prove insufficient to satisfy the whole of the purchase-money remaining unpaid, and the plaintiff afterwards obtains a personal decree against such assignee for the amount of other instalments of said purchase-money, which have become due since the institution of his suit, such personal decree is erroneous and will be reversed.  (p. 721.)

5. If the plaintiff in such suit appeals from a final decree therein, assigning other errors in said decree, and the appellees fail or neglect to file a cross-assignment of errors, to their prejudice, and such errors be found to exist, this Court will consider the whole record as before it and will reverse the proceedings in whole or in part, in the same manner as it would, if the appellee were to assign errors and bring the case before the Court, unless such error be waived by the party injured thereby.  (p. 722.)

6. A case in which an amended and supplemental bill was properly dismissed.

WOODS, JUDGE, furnishes the following statement of the case:

This was a suit brought in May, 1874, in the circuit court of Jackson county by Henry J. Fisher against John L. Hamilton and Thomas Brown, to enforce a vendor's lien upon a certain parcel of land then claimed by, and in the

possession of said Brown. The bill in substance alleges that the plaintiff, by an agreement under seal dated January 19, 1866, executed in duplicate by himself and Hamilton, bargained and sold to the latter a parcel of land in said county at the price of eight thousand dollars, with interest from the first day of March, 1866; that said Hamilton covenanted and bound himself to pay five hundred dollars of the purchase-money, each and every year, commencing on March 1, 1867, until the whole was paid, and also at the same time in each year would pay the whole interest on the unpaid purchase-money; that Hamilton immediately took possession of the land, occupied and enjoyed it, and paid the interest upon said purchase-money until March 1, 1872, but paid no part of the principal sum of eight thousand dollars; that afterwards by an endorsement upon said written agreement, the plaintiff released said Hamilton from the payment of the interest of the first year, and reduced the annual rate of interest upon one half of the purchase-money from six to three per centum per annum. This agreement and said endorsement are filed as exhibits and made parts of the bill. The plaintiff's bill further alleged that in the spring of 1872 Hamilton assigned his contract with the plaintiff, to Thomas Brown and delivered to him the possession of the land, who still holds the same, but has not paid one cent of either principal or interest "although frequently asked to do so;" and prays that the land may be sold for enough cash in hand to pay the first five installments then due, with the interest accrued on the whole purchase-money from March 1, 1866, amounting to the sum of four thousand seven hundred and twenty dollars, and the residue on credits to meet the remaining installments as they become due, and for general relief.

The defendants appeared and filed separate answers, to which general replications were filed, and Brown demurred to the bill which the court overruled. The answer of Hamilton admits all the allegations of the bill to be true as stated therein; that of Brown does the same except that he denies that no part of the principal sum was paid, and he avers that in addition to the interest up to March 1, 1872, Hamilton had paid three thousand dollars of the principal, the

benefit of which he claimed as a credit on the amount
claimed by the plaintiff, and he filed as an exhibit as part of
his answer, the duplicate of the contract between Hamilton
and the plaintiff, with Hamilton's assignment to him
endorsed thereon, in these words: "For value received I
assign all my right, title, interest, claim and demand of, in,
and to the within contract to Mr. Thomas Brown."

"Witness my hand the first day of March 1872.

"J. L. Hamilton."

To the answer of Brown the plaintiff also filed a special
reply, which was improper as the answer did not pray for
any affirmative relief or set up any facts entitling the defend-
ant to any such relief, but as it in fact amounted only to a
general replication it need not be further noticed. There
was no proof in support of the credit of three thousand dol-
lars claimed in the answer of Brown, on the principal of said
purchase-money, or of any other credit than the payment of
the interest accrued up to March 1, 1872, admitted in the
bill to have been paid by Hamilton before the assignment to
Brown. On the contrary it was clearly proved by the
depositions of Hamilton and the plaintiff, that at the time the
contract was assigned to Brown he was distinctly informed
that no part of the eight thousand dollars had been paid.

On this state of the pleadings and proofs the cause was
heard upon the 22d day of March, 1876, and the court en-
tered a decree therein whereby it was "adjudged, ordered and
decreed, that the plaintiff recover from the defendant,
Thomas Brown the sum of five thousand four hundred and
sixty dollars, the part now due on said contract with interest
from this date and costs," and appointed a special com-
missioner to make sale of said lands, in case the same
were not paid within forty days from that date, for enough
cash in hand to pay the decree, and the residue upon credit
to correspond with the credits given for said purchase-money
in the contract of sale between plaintiff and Hamilton.
Under this decree the land was sold on June 5, 1876, by the
special commissioner, and was purchased by the plaintiff at
the price of seven thousand four hundred dollars, which sale
was reported to; and confirmed by the court, which by its
decree confirming the sale, applied five thousand seven hun-

dred and thirty-three dollars and ninety-five cents in satisfaction of the amount of its former decree, including costs, and expenses of sale, leaving one thousand six hundred and sixty-six dollars and five cents, "to be applied on the residue of the original purchase-money and interest coming from the defendant, Thomas Brown, to the complainant in annual installments as set forth in the exhibits filed with his bill." A writ of possession was awarded the purchaser, to whom the commissioner was directed to convey the two hundred and sixty-two acres of land, and the cause was continued. Afterwards on the 10th of March, 1881, the circuit court entered another decree in the cause without petition, process or notice, whereby the court ascertained that since its former decree, five additional installments of said purchase-money had fallen due, which with interest to March 1, 1881, amounted to the further sum of three thousand one hundred dollars, from which it abated as of that date said one thousand six hundred and sixty-six dollars and five cents, the residue of the proceeds of said sale due from the plaintiff, leaving a balance due to him of one thousand four hundred and thirty-three dollars and ninety-five cents, with interest from March 1, 1881, until paid, for which a personal decree was rendered against the defendant, Brown, with leave to sue out execution therefor, if not paid within thirty days, with leave to the plaintiff to apply for a decree for the amount of the last installment of five hundred dollars, when it should become due, and the cause was again continued. On the 8th day of August, 1881, the plaintiff obtained leave and filed an amended and supplemental bill against the said defendants and against certain others described as the heirs of Ruth Brown, deceased, who was the wife of said Thomas Brown, seeking to set aside as fraudulent and void as to him, certain deeds from Thomas Brown and Ruth Brown, conveying separate parcels of land to her said heirs, alleging that said lands, which were conveyed to Ruth Brown by one R. S. Brown by deed dated July 15, 1875, were in fact purchased and paid for by said Thomas Brown, and at his instance fraudulently conveyed to his wife Ruth Brown, and seeking to charge said lands in the hands of her grantees with the payment of his decree of one thousand four hun-

dred and thirty-three dollars and ninety-five cents, and with the amount of said last installment, which he claimed was also due to him from Thomas Brown, which debts existed long before July 15, 1875.

The deed from R. S. Brown to Ruth Brown was duly acknowledged for record on the day of its date, and was recorded in said county on July 27, 1875. Thomas Brown appeared alone and answered the supplemental bill. By his answer he denied every material allegation thereof. Upon the further hearing of the cause the supplemental bill was dismissed, and to this decree the plaintiff obtained an appeal and *supersedeas* from this Court.

*C. E. Hogg* for appellant.

*C. L. Brown* for appellee.

WOODS, JUDGE:

The only error complained of by the appellant is, that the court dismissed his amended and supplemental bill because there was no proof that Ruth Brown paid for the lands conveyed to her said heirs described in the supplemental bill, out of her own separate estate. The most material question arising upon this record meets us at the threshold and must be disposed before we are called upon to consider the questions raised by the appellants, and that question is this: Is there in this record anything to show that there was any personal liability resting upon the defendant, Thomas Brown, to pay the plaintiff any portion of the purchase-money due to him from the defendant, John L. Hamilton? If there was not, then it becomes unnecessary to consider whether the supplemental bill was properly dismissed or not, for if the plaintiff had no debt against Thomas Brown, he can have no interest in the lands conveyed to Ruth Brown which she conveyed to her children. The contract of sale between the plaintiff and the defendant, Hamilton, as well as the endorsements thereon modifying the rate, and releasing part of the interest accrued thereon, as well as the assignment thereof to the defendant, Brown, have evidenty been drafted by a skillful hand, and that, not the hand of Thomas Brown,

who signed his answer with his cross-mark. But by whomsoever prepared, there is neither uncertainty nor ambiguity in their meaning, and the plaintiff's bill in setting forth his cause of action, as well as the deposition of the plaintiff taken in his own behalf, are equally certain and perspicuous in all their statements.

From the bill and exhibits the transaction appears to be exceedingly simple, and the legal liabilities arising out of the same easily understood. The plaintiff owned the land; the defendant, Hamilton, desired to purchase it upon long credits with interest upon the whole price, paying five hundred dollars of the principal annually; the plaintiff was willing to sell to him on these terms at the price of eight thousand dollars and to convey the same in fee simple with covenants of general warranty when all of said purchase-money and the taxes chargeable on the land after the date of the purchase should be fully paid; and their contract recited that "whereas the vendor and vendees are advanced in life, and may not live until the payments are made, in order to prevent trouble hereafter, as to the title to said land, said Fisher is to be at liberty at any time to make said conveyance to said Hamilton, and said Hamilton will execute and acknowledge for record a deed of trust on said land to secure the payment of the purchase-money or the unpaid part thereof with its interest to said Fisher, his personal representatives or assigns."

This contract imposed upon Hamilton the legal obligation to make the payments stipulated therein, and upon the plaintiff the equitable obligation to convey the land when all the purchase-money and taxes thereon were paid by Hamilton. Fisher was secured in his purchase-money by the vendor's lien on the land and by the personal obligation of the vendee's covenant to pay; and the vendee was secured by the covenant of his vendor to convey the land. Thus matters stood until the 1st day of March, 1872, when having paid all the interest accrued thereon up to that date, he "for value received, assigned all his right, title, interest, claim and demand of, in and to, the within contract to Mr. Thomas Brown." There is nothing in this assignment nor in any part of this record to show, and neither has the plaintiff stated in his bill

nor in his own deposition taken in support thereof, any allegation that the said Thomas Brown, at the time of said assignment to him, or at any time afterwards, ever undertook, assumed, promised or bound himself to pay to said plaintiff any part of said purchase-money. So far as this record shows, there existed no privity of contract between the plaintiff and said Brown. It is true he purchased the land from Hamilton, and that when he purchased it he knew that there was still eight thousand dollars of purchase-money due to the plaintiff from Hamilton, and the land in his hands was charged with a vendor's lien to secure the same. He stood simply as a man who had purchased an estate incumbered with a mortgage equal to its full value; if he would retain the estate he must discharge the mortgage-debt; if he failed to pay, the land was liable to be sold, but in neither case was he personally liable for any part of the mortgage-debt, in the absence of any promise, express or implied, to pay the same. This was the position occupied by the defendant, Brown, when the contract was assigned to him, and such was the position in which the plaintiff evidently regarded him when he filed his bill. Being in possession and claiming the land, he was a necessary party to the suit; the land in his hands was liable to be sold to satisfy the vendor's lien created thereon by Hamilton, and this was the measure of relief against him to which the plaintiff was entitled and this was the relief prayed for.

The plaintiff at the hearing of the cause on March 22, 1876, was clearly entitled to a decree against the defendant Hamilton for the sum of five thousand four hundred and sixty dollars, with interest from that date and costs, and in case of default made in the payment thereof that the said two hundred and sixty-two acres of land then owned by the defendant Brown should be sold to satisfy the same, but he was not entitled to a personal decree against said Brown for that sum of five thousand four hundred and sixty dollars, or any other part of said purchase-money, and the decree therefore as to him was erroneous, and but for the fact that it subsequently appears that he was not injured thereby the decree for that cause would have to be reversed. But as it appears from the decree confirming the sale of said land that the

land was purchased by the plaintiff at the price of seven thousand four hundred dollars, and the whole amount of this erroneous decree was in fact satisfied out of the proceeds of said sale as it ought to have been if said decree had been properly entered against the said Hamilton, the defendant, Thomas Brown, has not in any manner been prejudiced thereby, and this Court will not, therefore, for that error alone reverse said decree of March 22, 1876.

But the decree entered in this cause on the 10th day of March, 1881, can not in any view of the case be sustained. Without petition, notice or process, whereby the defendants, or either of them, are cited to appear, the court proceeded to re-hear the cause, and ascertained that since the rendition of its decree of March 22, 1876, five other of the installments of five hundred dollars each, mentioned in the bill, with six hundred dollars of interest amounting to the sum of three thousand one hundred dollars had become due, upon which the defendant Brown is entitled to a credit of one thousand six hundred and sixty-six dollars and five cents accruing from the proceeds of said sale which left one thousand four hundred and thirty-three dollars and ninety-five cents with interest from March 1, 1881, and decreed that the defendant Brown pay this amount to the plaintiff. Even if this decree had been correct in principle, it was erroneous in amount for the said one thousand six hundred and sixty-six dollars and five cents due from the plaintiff on account of his purchase of said land from said commissioner by the terms of the decree directing the sale, bore interest from the day of sale, viz, July 5, 1876, the correct balance including interest to the first day of March, 1881, was two thousand one hundred and thirty-one dollars and forty-three cents, which deducted from three thousand one hundred dollars would have left the correct balance, nine hundred and sixty-eight dollars and fifty-seven cents, instead of one thousand four hundred and thirty-three dollars and ninety-five cents.

In this view of the case it is immaterial what amount was due the plaintiff on the residue of his purchase-money, as the defendant, Thomas Brown, was not in any manner bound or liable to pay the same, and the said decree of March 10, 1881, must for that cause be reversed. This conclusion renders it

unnecessary to consider the errors assigned in regard to the dismissal of the supplemental bill, for as we have already seen, the defendant, Thomas Brown, was not indebted to the plaintiff by reason of any of the matters alleged in his bill; and having no demand against him he has no right to call in question the validity or good faith of the several conveyances made to the other defendants named in the supplemental bill, and therefore the court did not err in dismissing it. It is therefore adjudged, ordered and decreed, that the decree of the circuit court of Jackson county, entered on the 8th day of August, 1882, be affirmed, and that so much of the said decree entered on the 10th day of March, 1881, as adjudges that the said "plaintiff recover of the defendant, Thomas Brown, the sum of one thousand four hundred and thirty-three dollars and ninety-five cents with interest thereon from the 1st of March, 1881, until paid," and directing an execution to issue thereon, be reversed and annulled, and that the appellant pay to the appellees, as the parties substantially prevailing, their costs in this Court expended. And this cause is remanded to the said circuit court for further proceedings.

AFFIRMED IN PART.    REVERSED IN PART.    REMANDED.